UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Thomas J. Schaeppi,

Plaintiff,

v.

The Thermos Company,

Defendant.

Civil No. 00-2465 DWF/AJB

**STIPULATION AND ORDER TO ALLOW DEFENDANT THERMOS COMPANY TO FILE AMENDED ANSWER AND COUNTERCLAIMS**

---

WHEREAS, on August 1, 2001, the Defendant filed a Motion for Leave to File Amended Answer and Counterclaims, to be heard on August 21, 2001 at 11:00 a.m. in front of Magistrate Judge Boylan;

WHEREAS, on August 8, 2001, Defendant received a letter from Plaintiff's counsel indicating Plaintiff would stipulate to the filing of the Amended Answer and Counterclaims;

IT IS HEREBY STIPULATED AND AGREED:

1. Defendant shall file and serve its Amended Answer and Counterclaims upon receipt of the attached Order from the Court;

FILED AUG 10 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

2113937v1

2. Plaintiff shall file and serve its pleading in response to the Amended Answer and Counterclaims within 10 days of receipt of the attached Order from the Court.

Dated: August 9, 2001

Alan M. Anderson (#149500)
Sharna A. Wahlgren (#241581)
LARKIN, HOFFMAN, DALY & LINDGREN, LTD.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Bloomington, MN 55431-1194
(952) 835-3800

COUNSEL FOR PLAINTIFF
THOMAS J. SCHAEPPI

Dated: August 9, 2001

James G. Bullard (#123249)
Jennifer S. Wilson (#281037)
LEONARD, STREET AND DEINARD, Professional Association
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
(612) 335-1500

Kevin J. Byrne
Jeffrey H. Dean
SCHIFF HARDIN & WAITE
6600 Sears Tower
Chicago, IL 60606
(312) 258-5500

COUNSEL FOR DEFENDANT
THE THERMOS COMPANY

**ORDER**

This matter coming before the Court on the stipulation and of the parties, IT IS HEREBY ORDERED that:

1. Defendant shall file and serve its Amended Answer and Counterclaims upon receipt of this Order from the Court;

2. Plaintiff shall file and serve its pleading in response to the Amended Answer and Counterclaims within 10 days of receipt of this Order from the Court.

Dated: August 9th, 2001

Arthur J. Boylan
Magistrate Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THOMAS J. SCHAEPPI,<br><br>Plaintiff,<br><br>v.<br><br>THE THERMOS COMPANY,<br><br>Defendant. | No. 00-2465 DWF/AJB<br><br>**AMENDED ANSWER AND COUNTERCLAIMS OF DEFENDANT THE THERMOS COMPANY**<br><br>**JURY TRIAL DEMANDED** |

For its Amended Answer and Counterclaims to the Complaint of plaintiff Thomas J. Schaeppi ("plaintiff"), defendant The Thermos Company ("Thermos") states as follows:

1. Thermos admits that the Complaint purports to state a claim for patent infringement, and that this Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. Thermos is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 of the Complaint, and thus denies them.

3. Admitted.

4. Thermos is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4 of the Complaint, and thus denies them.

5. Thermos admits that Exhibit A to the Complaint is a copy of what appears to be U.S. Patent No. 5,590,808, which is entitled "Reusable Ribbed Beverage Container for Use With Vehicle Beverage Holders," and which issued on January 7, 1997 to plaintiff ("the '808 patent"). Thermos also admits that the '808 patent states that it is related to a number of other U.S. patent applications, including one application that was filed in January 1992. Thermos further admits that Exhibit B to the Complaint is what appears to be U.S. Patent No. 5,975,341, which is enti-

tled "Reusable Non-Spillable Beverage Container for Use With Vehicle Beverage Holders," and which was issued on November 2, 1999 to plaintiff("the '341 patent"). Thermos further admits that the '341 patent states that it is related to a number of other U.S. patent applications, including one application that was filed in January 1992. Thermos denies the remaining allegations of Paragraph 5 of the Complaint.

6. Thermos is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 of the Complaint, and thus denies them.

7. Thermos admits that it has manufactured and sold beverage containers, and that its beverage containers were sold in interstate commerce throughout the United States. Thermos denies the remaining allegations of Paragraph 7 of the Complaint.

8. Thermos admits that it has never made any payments to Plaintiff, but denies any suggestion that such payments were required. Thermos further denies the remaining allegations of Paragraph 8 of the Complaint.

**Count I—Patent Infringement**
**(U.S. Patent No. 5,590,808)**

9. Thermos incorporates its answers to Paragraphs 1-8 of the Complaint as if fully restated herein.

10. Thermos is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 of the Complaint, and thus denies them.

11. Thermos denies the allegations of Paragraph 11 of the Complaint.

12. Thermos denies the allegations of Paragraph 12 of the Complaint.

13. Thermos denies the allegations of Paragraph 13 of the Complaint.

14. Thermos denies the allegations of Paragraph 14 of the Complaint.

**Count II—Patent Infringement**
**(U.S. Patent No. 5,975,341)**

15. Thermos incorporates its answers to Paragraphs 1-14 of the Complaint as if fully restated herein.

16. Thermos denies the allegations of Paragraph 16 of the Complaint.

17. Thermos denies the allegations of Paragraph 17 of the Complaint.

18. Thermos denies the allegations of Paragraph 18 of the Complaint.

19. Thermos denies the allegations of Paragraph 19 of the Complaint.

20. Thermos denies each and every allegation of the Paragraphs 1-19 of the Complaint that is not expressly admitted herein.

**Additional Defenses**

For its additional defenses to Counts I and II of the Complaint, Thermos states as follows:

**First Defense**

Thermos has not infringed, either directly or by reason of active inducement or contributory infringement, any claim of the '808 patent or the '341 patent.

**Second Defense**

All of the claims of the '808 and the '341 patent are invalid.

**Third Defense**

Plaintiff is precluded by the doctrine of laches from recovering any damages that may have arisen prior to the filing of the Complaint.

**Fourth Defense**

Plaintiff's claims are barred by the doctrine of estoppel.

**Fifth Defense**

The '808 patent and the ''341 patent are unenforceable as a result of plaintiff's inequita-

ble conduct before the United States Patent and Trademark Office.

**Sixth Defense**

The '808 patent and the '341 patent are unenforceable as a result of patent misuse, including plaintiff's assertion of claims in this lawsuit that plaintiff knows to be without basis in law or fact.

**COUNTERCLAIMS**

For its counterclaims against plaintiff Thomas J. Schaeppi ("Schaeppi"), defendant The Thermos Company ("Thermos") respectfully states as follows:

**Jurisdiction and Venue**

1. Thermos is a Delaware corporation with its principal place of business at 300 N. Martingale Road, Suite 250, Schaumburg, Illinois 60173.

2. Schaeppi is a domiciliary of the State of Minnesota.

3. This Court has jurisdiction over the subject matter of Thermos' counterclaims pursuant to 28 §§ 1331, 1338(a), 2201 and 2202 because Thermos' counterclaims arise under the patent laws of the United States and because there is a case and controversy between the parties concerning the infringement, validity, and enforceability of the patents-in-suit.

4. This court has personal jurisdiction over Schaeppi because Schaeppi resides in this State and because Schaeppi has consented to the jurisdiction of this Court by filing the Complaint in this action.

5. Venue is proper in this district because Schaeppi resides in this district and because Schaeppi has consented to venue in this district by filing the Complaint in this action.

**DECLARATORY JUDGMENT**

6. In this action, Schaeppi alleges that he is the owner of U.S. Patent No. 5,590,808,

entitled "Reusable Ribbed Beverage Container for Use With Vehicle Beverage Holders" ("the '808 patent"), and that Thermos has infringed the '808 patent.

7. In this action, Schaeppi alleges that he is the owner of U.S. Patent No. 5,975,341, entitled "Reusable Non-Spillable Beverage Container for Use With Vehicle Beverage Holders" ("the '341 patent"), and that Thermos has infringed the '341 patent.

8. Thermos alleges that all of the claims the '808 patent and the '341 patent are invalid, that none are infringed, and that both the '808 Patent and the '341 patent are unenforceable by reason of plaintiff's misuse of his patents and plaintiff's inequitable conduct before the United States Patent and Trademark Office during the prosecution of both the '808 patent and the '341 patent.

9. As a result, there is a case and controversy between the parties concerning the infringement, validity, and enforceability of the '808 patent and the '341 patent.

**Count I – Non-Infringement**

10. Thermos incorporates paragraphs 1-9 of Thermos' counterclaims as if fully alleged herein.

11. Thermos has not made, used, sold, or offered for sale any product that infringes any valid claim of the '808 patent or the '341 patent.

12. Thermos has not contributed to the infringement by others of any valid claim of the '808 patent or the '341 patent.

13. Thermos has not actively induced the infringement by others of any valid claim of the '808 patent or the '341 patent.

**Count II – Invalidity**

14. Thermos incorporates paragraphs 1-13 of Thermos' counterclaims as if fully al-

leged herein.

15. Each of the claims of the '808 patent and the '341 patent is invalid for failure to satisfy the requirements of patentability, including, but not limited to, the requirements set forth in 28 U.S.C. §§ 102, 103, and 112.

**Count III – Unenforceability**
**(Inequitable Conduct)**

16. Thermos incorporates paragraphs 1-15 of Thermos' counterclaims as if fully alleged herein.

17. During the prosecution of the '808 patent and the '341 patent, plaintiff knowingly, and with the intent to mislead, submitted a false affidavit and at least two false oaths to, and withheld other material information from, the United States Patent and Trademark Office. Because of plaintiff's inequitable conduct during the prosecutions of the '808 patent and the '341 patent, neither of those patents is enforceable.

**Plaintiff's Submission of a**
**False Affidavit to the Patent Office**

18. During the prosecution of the '808 Patent, the examiner rejected all of plaintiff's claims as obvious in light of the prior art.

19. Plaintiff responded to the examiner's rejections by submitting an affidavit in which he argued, among other things, that he and his professional marketing company, TM Marketing, Inc., had made substantial sales of the invention between the years 1992 and 1994, and that this evidence of "commercial success" was sufficient to rebut the examiner's findings that the inventions were obvious.

20. The examiner stood by his final rejections, and plaintiff appealed the examiner's rejections to the Board of Patent Appeals and Interferences.

21. On appeal, the Board dismissed plaintiff's allegations of "commercial success" because plaintiff failed to allege or demonstrate that his alleged sales were caused by features of the patented invention as opposed to superior marketing activities, advertising, and/or business acumen:

> We do not consider the evidence presented by applicant in his § 1.132 declaration sufficient to rebut the *prima facie* obviousness . . . The declaration does not establish a nexus or connection between what is recited . . . and the asserted increased sales and copying by others. ... [I]ncreased sales and copying must be shown to have been due to the nature of the claimed invention, as opposed to other economic and commercial factors. [Citation omitted.] Appellant's bare recitations in his declaration of sales figures and a list of alleged copiers do not satisfy this requirement.

22. Nearly four years later, during the prosecution of the '341 application, the examiner again rejected plaintiff's claims as obvious in light of the prior art. And plaintiff again proffered a nearly identical affidavit showing the alleged commercial success of the invention, this time showing sales during the years 1992-1996.

23. In this second affidavit, however, plaintiff attempted to cure the problem first identified by the Board during the prosecution of the '808 patent—namely, that plaintiff offered no proof that the alleged sales were caused by the invention itself as opposed to superior advertising skills of plaintiff and his professional marketing company, TM Marketing, Inc., as well as others working on plaintiff's behalf.

24. Plaintiff, therefore, added the following line to his affidavit: "This commercial success is due to the merits of the invention, *because neither Applicant nor his company has ever advertised the invention*" (emphasis added).

25. The quoted sentenced in paragraph 24 of this counterclaim was false when made, and was intended by plaintiff to mislead the examiner into finding a nexus between plaintiff's

alleged commercial success and demand for plaintiff's alleged invention.

26. Prior to July 13, 1998—the date of plaintiff's false affidavit—plaintiff and his professional marketing company, TM Marketing, Inc., extensively advertised, marketed, and promoted plaintiff's Tower Travel Mug product, the very product that plaintiff contended in both affidavits embodied the inventions of both the '808 and '341 patents. Numerous documents produced in response to Thermos' discovery requests reflect that plaintiff, his professional marketing company, and others working on their behalf promoted plaintiff's product in numerous brochures, letters, direct mailings, advertisements, catalogs, newspapers, magazines, and trade publications. Several such advertisements advised potential customers to contact plaintiff by name and provided both the address and telephone number of plaintiff's professional marketing company. Each of these documents shows unequivocally that plaintiff and his professional marketing company extensively advertised, marketed, and promoted his Tower Travel Mug product prior to July 13, 1998—the date of plaintiff's false affidavit.

27. Plaintiff knew that his affidavit was false when made because plaintiff knew that he and his professional marketing company had—in countless instances prior to July 13, 1998—advertised, promoted, marketed, and solicited others to advertise, promote, and market, his alleged inventions.

28. Plaintiff's false affidavit was material because plaintiff made his false statement expressly to rebut the obviousness objections raised by the examiner. Plaintiff's false affidavit was material also because the Board of Patent Appeals and Interferences expressly held that plaintiff's 1993 affidavit was insufficient because plaintiff had not alleged a nexus between his alleged commercial success and the alleged invention itself. Because plaintiff's false affidavit was intended to overcome an evidentiary defect first identified by the Board, that affidavit is de-

finitionally material.

29. Plaintiff submitted his false affidavit with the intent to mislead the examiner. Plaintiff knew that the examiner would follow the holding of the Board, and would reject any evidence of "commercial success" without evidence that the alleged sales of the invention were caused by the invention itself, as opposed to the advertising of plaintiff's professional marketing firm. Plaintiff knew that the examiner would credit his evidence of "commercial success" only if there was evidence that the alleged sales of the invention were not caused by the advertising acumen of plaintiff or his professional marketing company. Plaintiff knew that he and his professional marketing company had, in fact, advertised and solicited others to advertise his invention for several years in countless instances prior to July 13, 1998. Finally, plaintiff knew that any statement suggesting that neither he nor his company had advertised the invention would be more likely to cause the examiner to credit plaintiff's evidence, which, without the addition of the false statement, had been dismissed by the Board.

30. Plaintiff's false affidavit amounted to an egregious breach of his duty of candor to the PTO, and thus renders his patents unenforceable.

**Plaintiff's Withholding of**
**Invalidating Sales Information**
**from the Patent Office**

31. Section 102(b) of the Patent Statute provides that "[a] person shall be entitled to a patent unless . . . (b) the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. § 102(b).

32. The asserted claims of the patents-in-suit enjoy a priority date no earlier than December 17, 1992, the filing date of plaintiff's first utility application. Many of the claims (if not all) enjoy a priority date later than December 17, 1992. No application prior to December 17,

1992 disclosed, much less claimed, the specific combination recited in claims that are asserted in this lawsuit, or, indeed, any combination of a beverage holder and a beverage container.

33. Any public use, sale, or offer for sale of one or more of the inventions claimed in the ‘808 patent or the ‘341 patent prior to December 17, 1991 would have disqualified plaintiff from obtaining patent protection for each such invention.

34. Plaintiff offered for sale, publicly used, and/or actually sold each of the inventions claimed in the '808 patent and the '341 patent before December 17, 1991, but never disclosed that information to the United States Patent and Trademark Office.

35. Plaintiff has admitted under oath in interrogatory answers filed in this lawsuit that: "[A]ny invention claimed in the '341 and '808 Patents was first . . . offered for sale in approximately the Spring of 1991."

36. Plaintiff failed to disclose to, and affirmatively withheld from, the patent examiner the fact that he had offered for sale each of the inventions claimed in the '341 and '808 patents prior to December 17, 1991.

37. Plaintiff's misleading omission of his prior public uses, offers for sale, and/or sales of the invention was material because, had he disclosed the same information to the examiner, he would not have been entitled to patent protection for any of the claims of the '341 patent or the '808 patent.

38. Plaintiff's omissions were made with the intent to deceive the United States Patent and Trademark Office because plaintiff knew that the disclosure of his prior public uses, offers for sale, and/or sales would have rendered each and every claim of the '341 patent and the '808 patent unpatentable.

**Plaintiff's False Oath of Inventorship**

39. During the prosecution of each of the patents-in-suit, plaintiff swore an oath that he was the sole inventor of the recited inventions and submitted the same to the United States Patent and Trademark Office.

40. Each of those oaths was false when made because plaintiff is not the sole inventor of any of the claims of either of the patents-in-suit.

41. Mr. Morry Karp, of Bcrncy-Karp, Inc., a California corporation engaged in the business of manufacturing, *inter alia*, beverage cups and mugs, was (at the very least) a joint inventor of each of the claims of the patents-in-suit.

42. Mr. Karp was responsible for conceiving numerous shape, dimensional, size, structural, and other limitations of the claimed beverage containers, and was the sole person to have reduced the invention to practice more than a year before December 17, 1991.

43. Mr. Karp was the first person to actually produce any cup or mug in cooperation with plaintiff, and Mr. Karp, in so doing, conceived in whole or in part several aspects of the claimed beverage container, including shape, dimension, size, and other structural attributes that are recited in the claims.

44. Mr. Karp made express claims to have been at least a co-inventor of the inventions claimed in the '808 patent and, in the context of a 1998 settlement of litigation between Mr. Karp and plaintiff, negotiated an assignment with plaintiff according to which Karp assigned to plaintiff all of his ownership rights in both the '808 patent and any continuation-in-part therefrom, which includes the '341 patent.

45. Plaintiff never disclosed to, and knowingly withheld from, the Patent Office the fact that Mr. Karp was (at the very least) a joint inventor of the inventions recited in the '808 pat-

ent and the '341 patent. Plaintiff further failed to disclose to, and knowingly withheld from, the Patent Office the position taken by Mr. Karp, while litigation between plaintiff and Mr. Karp relating to the '808 patent was pending, asserting an inventorship interest by Mr. Karp in plaintiff's patents.

46. That Mr. Karp was (at the very least) a joint inventor of each of the claims of the patents-in-suit is material information which plaintiff was obligated to disclose, correct identification of inventorship being a statutory requirement of patentability.

47. Plaintiff acted with the intent to deceive, and in fact deceived, the Patent Office into believing that plaintiff was the sole inventor of the claims recited in the patents-in-suit.

48. The foregoing false oaths and omissions of material facts during the prosecutions of the '341 patent and the '808 patent amount to inequitable conduct and render each of the claims of the '808 patent and the '341 patent unenforceable.

**Count IV –**
**Unenforceability (Patent Misuse)**

49. Thermos incorporates paragraphs 1-48 of Thermos' counterclaims as if fully alleged herein.

50. Plaintiff filed this action knowing that his patents are invalid, against products known not to infringe, and for the purpose of reducing competition for the manufacture and sale of staple articles of commerce.

51. Plaintiff knows that his own commercial activities prior to December 17, 1991 render all of the claims of the '808 patent and the '341 patent invalid. Plaintiff's assertion of invalid claims in this lawsuit is in bad faith resulting in an unreasonable restraint on lawful competition.

52. Plaintiff also asserts that the use, manufacture, sale, and offer for sale of the ac-

cused beverage containers standing alone amounts to contributory infringement of both patents-in-suit. Plaintiff knows that his claims of contributory infringement are frivolous because, *inter alia*, the accused beverage containers are staple articles of commerce and have substantial non-infringing uses, and because the accused beverage containers can be used, and in fact are used, without being placed inside, or used in combination with, any automobile beverage holder, much less any automobile beverage holder that meets the limitations of any of the asserted claims. By asserting his contributory infringement claim, plaintiff seeks to assert his patent monopoly over beverage containers alone and without regard for whether beverage containers are used in combination with specific beverage holders, as is required by the asserted claims. Plaintiff seeks impermissibly to expand the scope of his patent claims in bad faith and for the purpose of causing anticompetitive effects.

53. During the prosecution of the '808 patent, the Board of Patent Appeals and Interferences held that the only feature that distinguished plaintiff's invention from the prior art was the limitation that the height of the upper portion of the beverage container must be approximately one-half the height of the lower portion. In this action, plaintiff asserts his patent claims against beverage containers wherein the opposite is true—namely, that the height of the upper portion is approximately twice the height of the height of lower portion. Plaintiff seeks to expand his patent monopoly to capture the very beverage containers that the Board of Patent Appeals and Interferences held to be part of the public domain. Plaintiff seeks impermissibly to expand the scope of his patent claims in bad faith and for the purpose of causing anticompetitive effects.

WHEREFORE, defendant Thermos respectively prays that this honorable Court enter judgment in Thermos' favor and against plaintiff:

a) dismissing plaintiff's claims in their entirety with prejudice;

b) denying all relief sought by plaintiff;

c) declaring that none of the claims of the '808 patent and the '341 patent are infringed;

d) declaring that all of the claims of the '808 patent and the '341 patent are invalid;

e) declaring that all of the claims of the '808 patent and the '341 patent are unenforceable;

f) declaring this an exceptional case pursuant to 35 U.S.C. § 285 and awarding Thermos its costs and expenses reasonably incurred in defending against this action, including a reasonable attorneys' fee; and

g) awarding Thermos such other relief as this Court deems just and reasonable under the circumstances.

James G. Bullard (#123249)
Jennifer S. Wilson (#281037)
LEONARD, STREET AND DEINARD
Professional Association
150 South Fifth Street
Suite 2300
Minneapolis, Minnesota 55402
(612) 335-1500

Kevin J. Byrne
Jeffrey H. Dean
SCHIFF HARDIN & WAITE
6600 Sears Tower
Chicago, Illinois 60606
(312) 258-5500

Counsel for Defendant
THE THERMOS COMPANY

DATED: August 1, 2001

## Please forward this announcement to the recipient of this fax.

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500